IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JAMES CHARLES SMITH, #881812 | § | |
| VS. | § | CIVIL ACTION NO. 9:05cv177 |
| DOUGLAS DRETKE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff James Charles Smith, a prisoner confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

History of the Case

The original complaint was filed in the Southern District of Texas on August 5, 2005. On August 10, 2005, United States District Judge Vanessa D. Gilmore transferred the complaint to this Court. On November 22, 2005, United States Magistrate Judge Harry W. McKee issued a Report and Recommendation concluding that the Plaintiff's deprivation of property claim should be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted and his remaining claims should be dismissed without prejudice for failure to exhaust administrative remedies. The Report and Recommendation was adopted and the case was dismissed on December 8, 2005.

The Plaintiff filed a notice of appeal. On January 31, 2007, the Fifth Circuit affirmed, in part, the judgment of this Court and vacated and remanded the Plaintiff's conspiracy to deny access to court

1

claim. The Fifth Circuit noted that the Plaintiff complained that the Defendants denied him access to the courts when they deprived him of his legal property and when they interfered with his legal mail. The Fifth Circuit further noted that Magistrate Judge McKee did not include in his characterization of the Plaintiff's claim a denial of access to court claim; instead, he referred only to deprivation of property and mail fraud claims. The Fifth Circuit concluded that the conspiracy to deny access to court claim needed further consideration.

Facts of the Case

Pursuant to the Fifth Circuit's instructions, the Court took steps to develop the Plaintiff's denial of access to court claim. On March 15, 2007, the Plaintiff was ordered to answer interrogatories concerning the claim. He filed a response on March 23, 2007. His response included the following discussion concerning the nature of his claim:

> I was deprived of more than $45,000.00 dollars worth under cover investigation legal documents and evidence collected in relation to the unlawful staging of my current false imprisonment. I lost court reporter records bail bond contracts lawyer letters, F.B.I. letters, Sheriff Department letters, writ of habeas corpus petition highly confidential F.B.I. classified undercover investion material, sheriff investigation reports Black Law Dictionary, Texas criminal code of procedure, Texas Rules of civil procedure, Federal civil procedure book, records reports of tracking information, bank statement, SS# TDC# habeas corpus practice and procedure book, manual of Federal practice, law and rules book, Rules of evidence, Federal Rules of Appellate Procedure legal notice, legal address, book, legal documents with very important information on them related to my cases, legal actual innocent evidence with legal material with highly confidential legal tracking information post-conviction documents and legal material indictments, arrest warrants, docket sheet motions, legal petitions, Dictionary, legal typing paper legal and business envelopes. . . . I was deprived of my legal property on February 23, 2005.

He added that he was harmed as follows:

> I am a victim of theft of identity in connection with public corruption fraud scheme, as a result of Defendants depriving me of my legal property I was cause injury by being hindered of being able to petition the court to pursue multiple nonfriviolous legal claims and from being able to provide the F.B.I. with leads that would have helped them out with an ongoing investigation.

He also asserted that Mailroom Supervisor Penny Long interfered with his legal mail beginning in January, 2002, and continuing to the present time.

On May 22, 2007, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Chip Satterwhite and Assistant Warden Wesley Pratt testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff testified that he is in custody pursuant to a Harris County conviction for the offense of aggravated assault. On November 30, 1998, he was placed on five years deferred adjudication. On July 2, 1999, the state trial court revoked his deferred adjudication probation and sentenced him to sixteen years confinement in the Texas prison system. The Plaintiff provided extensive testimony about how his deferred adjudication probation was improperly revoked, which is beyond the scope of this lawsuit. The conviction was affirmed. *Smith v. State*, No. 14-99-00958-CR, 2001 WL 8345 (Tex. App. - Houston [14th Dist.] Jan. 4, 2001).

The Plaintiff then challenged his conviction in state habeas corpus proceedings. On April 24, 2002, the Texas Court of Criminal Appeals denied his application without written order on the trial court's findings without a hearing. *Ex parte Smith*, No. WR-42,718-02, http://www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=1987531. On March 16, 2005, the Court of Criminal Appeals denied his motion for leave to file a petition for a writ of mandamus without order. *Ex parte Smith*,

No. WR-42,718-03, http://www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2190836. Another motion for leave to file a petition for a writ of mandamus was denied on September 27, 2006.

The Plaintiff also took steps to challenge his conviction in the Southern District of Texas. He filed a petition for a writ of habeas corpus on January 31, 2006, in *Smith v. Dretke*, Civil Action No. 4:06cv512. On June 6, 2006, United States District Judge Melinda Harmon dismissed the petition. In dismissing the case, she found that any federal petition for a writ of habeas corpus filed by the Plaintiff challenging his conviction had to be filed no later than late June, 2002. She dismissed the petition as time-barred since it was not filed until more than three and one-half years later on January 31, 2006. Subsequently, on February 7, 2007, the Fifth Circuit denied the Plaintiff permission to file a successive § 2254 petition. *In re: Smith*, No. 06-20949. The Fifth Circuit noted that he was seeking relief based on newly discovered evidence, but he failed to make a prima facie case.

Federal court records in the Southern District of Texas reveal that he has also filed a number of civil rights lawsuits. The first lawsuit was filed on November 24, 2004, in *Smith v. State of Texas*, Civil Action No. H-04-4504. The Plaintiff filed the civil rights lawsuit alleging there was conspiracy that led to the revocation of his deferred adjudication probation. On December 17, 2004, United States District Judge Nancy F. Atlas dismissed the lawsuit as frivolous because it was fanciful, fantastic and delusional. The lawsuit was additionally dismissed for failure to state a claim upon which relief may be granted and also in accordance with *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). On January 14, 2005, the Plaintiff filed another lawsuit in *Smith v. Dretke*, Civil Action No. 4:05cv219. On April 30, 2005, United States District Judge Lynn N. Hughes dismissed the case because it was frivolous and identical to Civil Action No. H-04-4504. On April 26, 2007, the Plaintiff filed *Smith v. Livingston*, Civil Action No. 4:07cv1445. On May 5, 2007, United States District Judge Ewing Werlein, Jr., dismissed the lawsuit pursuant to the "three strikes" provisions of 28 U.S.C. § 1915(g).

4

The Plaintiff arrived at the Polunsky Unit in June of 2000. He testified that he had problems with legal mail starting in 2002. He sued Mailroom Supervisor Penny Long because of these problems. He explained that he sent letters to the F.B.I. as legal mail, but the letters were returned opened with the explanation that the letters could not be sent out as legal mail. He also received legal mail that had already been opened by the time he received it. The letters were not opened in his presence. He argued that opening his legal mail outside of his presence constituted a denial of access to court. He also argued that officials must have tampered with letters he sent to attorneys asking for help. He knew that the letters were tampered with because his brother called the attorneys and was told they never received the letters.

The Plaintiff's primary denial of access to court claim concerned the confiscation of his legal property on February 23, 2005. A routine search of property was conducted in the multi-purpose room at that time. He took four bags of property to the multi-purpose room, including all of his legal property. He was told that he had too much property, and it was confiscated. Property Officer Candice Ham subsequently told him that the property was destroyed on May 19, 2005. A response to a grievance indicated that the property was destroyed in June, 2005. The Plaintiff testified that the response to his Step 2 grievance specified that he was given the opportunity to decide which property he wanted to keep, but he stressed that he was never given a choice.

Warden Wesley Pratt testified under oath from the Plaintiff's security records. The records included an entry noting that the Plaintiff had too much property and it was confiscated. The Plaintiff indicated he wanted the F.B.I. or the special prosecutor to pick it up, as opposed to a family member. Warden Pratt testified that legal boxes are provided for excess legal property. He noted that the law library staff checks the legal property to ascertain whether it concerns a case currently pending in court.

...

## Discussion and Analysis

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson v. Avery*, 393 U.S. 483, 486 (1969). "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The Supreme Court has held that the right of meaningful access to court imposes a duty on prison officials to provide indigent inmates with either an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. at 828. The Texas prison system provides both attorneys and law libraries. The parameters of the prison system's access to court plan has been defined in conjunction with the *Ruiz* litigation.

On the other hand, an inmate's right of access to court is not absolute. The Supreme Court has noted some of the limits on the right of access to court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). Prison officials may place reasonable limits on the right. *See Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). Restrictions may be imposed for security reasons. *See Solomon v. Zant*, 888 F.2d 1579, 1581 (11th Cir. 1989); *Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *overruled on other grounds, Thornburg v. Abbott*, 490 U.S. 401 (1989).

The Fifth Circuit issued definitive guidelines regarding legal mail in *Brewer v. Wilkinson*, *supra*. The Fifth Circuit held that a violation of a prison regulation requiring that a prisoner be present when his legal mail is opened and inspected is not a violation of his constitutional rights. 3 F.3d at 825. On the other hand, an inmate is denied access to court when officials prevent necessary legal documents from arriving in court. *Id.* at 826.

In this case, however, as in so many cases filed by inmates, the dispositive factor that the Court must consider is harm. To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. at 351. In *Lewis v. Casey*, the Supreme Court stated that an inmate must show more than the inability to file a claim in order to succeed on an access to court claim; instead, he must show that he would have been able to bring a nonfrivolous claim with arguable legal merit -- he must show an actual injury. 518 U.S. at 351-53.

In the present case, the Plaintiff complained that he was deprived of his legal property on February 23, 2005. By then, however, any petition for a writ of habeas corpus he desired to file challenging his conviction was time-barred. In *Smith v. Dretke*, Civil Action No. 4:06cv512, the Southern District of Texas found that he had to file a federal petition no later than late June, 2002. He thus could not have been harmed by the confiscation and destruction of legal property in 2005. It is noted that the Plaintiff also filed civil rights lawsuits concerning his conviction in the Southern District of Texas, but such civil rights lawsuits were dismissed as frivolous. They were dismissed as frivolous, in part, because he may not bring a civil rights lawsuit for actions whose unlawfulness would render his conviction or sentence invalid unless he first proved that the conviction or sentence had been

7

reversed, expunged, invalidated, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. at 486. He could not satisfy *Heck*. Furthermore, it does not appear that he will ever be able to satisfy *Heck* since any challenge to his conviction is time-barred in federal court or barred in state court by state rules prohibiting successive 11.07 applications. *See* Tex. Code Crim. Proc. Ann. art. 11.07 § 4.

The Plaintiff testified that he should be able to pursue habeas relief based on newly discovered evidence showing that he was actually innocent of the crime. The Fifth Circuit, however, denied him permission to file a successive § 2254 petition based on this ground. Moreover, he cannot obtain habeas corpus relief based on this type of claim. The Supreme Court has made the following observation: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). The Fifth Circuit subsequently held that claims of actual innocence are not cognizable on federal habeas review. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999). The Plaintiff simply cannot obtain habeas corpus relief regarding his conviction and cannot pursue a civil rights lawsuit regarding his conviction. Consequently, to the extent that the Defendants may have interfered with his right of access to court, the Plaintiff may not proceed with his claims because he has not shown harm or an actual injury as that concept has been defined by the Supreme Court.

The Fifth Circuit's order remanding the case noted that the Plaintiff couched his denial of access to court claim in the context of a conspiracy claim. To prove a conspiracy, the Plaintiff must prove an actual deprivation of a constitutional right. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). *See also Pfannstiel v. City of*

*Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). The Plaintiff has not shown a violation of his constitutional right of access to court, thus he does not have a basis for a conspiracy claim.

In conclusion, the facts as alleged by the Plaintiff do not provide a basis for a potentially successful civil rights lawsuit. The complaint fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **4**   day of **June, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE